IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSEF RICKETTS,

    Plaintiff,

v.                                CIVIL ACTION NO. 2:21-cv-00056

NV5, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before this court is Plaintiff's Motion for Conditional Class Certification and Court-Authorized Notice. [ECF No. 19]. Mr. Ricketts asks the court to certify a conditional class of "[a]ll current and former NV5 Inspectors who were paid on a day rate basis at any time during the past 3 years." *Id.* Defendant NV5 objects to Mr. Ricketts's request on the merits, and in the alternative, if the court does grant conditional certification, objects to the form of the notice. [ECF No. 24]. For the reasons below, I **GRANT** Mr. Ricketts's request for conditional class certification. However, I **SUSTAIN** NV5's objections to the description of the conditional class, as outlined below. I also **SUSTAIN** NV5's objection to a reminder notification 30 days after the original notice is sent. NV5's remaining objections, as outlined below, are **OVERRULED**.

I. Background

Mr. Ricketts alleges that NV5, LLC, has violated the Fair Labor Standards Act ("FLSA") by paying him a day rate disguised as an hourly rate and failing to pay overtime for time he worked in excess of forty hours per week. [ECF 1, at ¶ 107]. He alleges that NV5 pays all of its inspectors this disguised day rate and brings this action on their behalf. Mr. Ricketts now asks this court to conditionally certify a class of all "current and former NV5 Inspectors who were paid on a day rate basis at any time during the past 3 years." [ECF No. 20].

NV5 provides engineering and consulting services to help clients plan, design, build, test, certify, and operate projects. NV5 employed Mr. Ricketts as an environmental inspector for two projects between January 2018 and June 2018. [ECF No. 1, at ¶ 36]. Mr. Ricketts claims that NV5 paid all of its inspectors a disguised day rate by requiring them to record a set number of hours on their timesheet. [ECF No. 20, at 1].

Mr. Ricketts asserts that, instead of paying him an hourly rate, NV5 paid him the same amount each week—$2,323.79—no matter how many hours he worked. He alleges NV5 required him to record that he worked ten hours per day, seven days per week, regardless of the hours he worked, so they could pay him a standardized weekly rate. [ECF. No. 1, at ¶ 42]. Accordingly, NV5's payment records show that they paid Mr. Ricketts on an hourly basis with overtime, when in fact they paid him a standardized day rate. *Id.* at ¶¶ 42, 49.

Specifically, Mr. Ricketts alleges that, instead of paying him hourly for 70

2

hours of work, $27.34 per hour for 40 hours and $41.01 per hour for 30 hours, NV5 paid him a standard rate of $2,323.79 per week, which breaks down into $331.97 per day—the "disguised" day rate. He asserts that NV5 pays all of its inspectors this way. Mr. Ricketts argues that because he and others were paid a standardized day rate, they are entitled to overtime pay based on that rate for the time they worked in excess of 40 hours in a week. *Id.* at ¶ 107.

Mr. Ricketts supports his assertions with a declaration in which he avers that "based on [his] observations on location, and [his] conversations with co-workers, including Brandon Rubecker," NV5 pays all of its inspectors a disguised day rate *Id.* As further support for his claims, Mr. Ricketts embedded into his declaration excerpts of his timesheet for the weeks of January 14 to January 27, which show that he recorded exactly ten hours per day for seven days per week, as well as excerpts from NV5's offer letter outlining what he could expect to earn based on a workweek of ten hours per day, seven days per week. [ECF No. 20-1].

NV5 objects to Mr. Ricketts's motion to certify a conditional class because, they argue, he has not provided sufficient factual support for his claims. They deny that any such disguised day rate policy exists and point to their written policy that hourly workers must keep accurate timesheets and seek advanced approval to work overtime hours. [ECF No. 24-3, at 38]. NV5 reveals that no supervisors were located at either of Mr. Ricketts's jobsites who would notice that he worked more hours than recorded, let alone require him to do so. Finally, they assert that Mr. Ricketts did not provide

3

any corroboration that he was required to record a set amount of hours per week or that he worked hours for which he was not paid. NV5 argues that in light of these asserted deficiencies, Mr. Ricketts has failed to provide sufficient evidence to support his claim of an unwritten day rate policy. [ECF No. 24, at 8].

In the alternative, NV5 argues that even if the court finds that Mr. Ricketts supports his own claims with adequate factual support, he does not provide any evidence of a company-wide disguised day rate policy. Beyond saying that he "was required" to only record ten hours per day, Mr. Ricketts fails to allege how the requirement was imposed, by whom, and how it would have applied to all inspectors. And because his declaration is limited to knowledge he gained from observations at his jobsite and conversations with his co-workers, he cannot establish that the complained-of practice exists outside of the projects Mr. Ricketts worked on. *Id.*

## II. Discussion

### a. Conditional Class Certification

The FLSA allows a court to certify collective actions by opt-in plaintiffs who are "similarly situated." 29 U.S.C. § 216(b). Courts generally use a two-step approach to certify FLSA collective actions. *O'Quinn v. TransCanada USA Servs., Inc.*, 469 F. Supp. 3d 591, 604 (S.D.W. Va. 2020) (collecting cases). "In the first phase of this inquiry a court examines the pleadings and affidavits of the proposed action in search of a 'modest factual showing' that the proposed class is similarly situated." *Id.* Once this hurdle has been cleared, a court conditionally certifies the class so that potential

4

plaintiffs may be notified of the pending action and choose to opt-in if they wish to do so, and the action proceeds as a representative action throughout discovery. *Id.* The second phase of the inquiry, undertaken after discovery is largely completed, "is typically precipitated by a motion for 'decertification' by the defendant." *Westfall v. Kendle Int'l, CPU, LLC*, No. 1:05-CV-00118, 2007 WL 486606, at *8 (N.D. W. Va. Feb. 15, 2007).

Because this case is in its preliminary stages, I will limit my consideration to the first phase of the inquiry: whether Mr. Ricketts and other proposed class members are "similarly situated" enough to preliminarily certify a class. Section 216(b) does not define "similarly situated," but this court has held that a proposed class is "similarly situated" for the purposes of the initial inquiry when the plaintiff shows "that putative class members were together the victims of a single decision, policy, or plan that violated the law." *O'Quinn*, 469 F. Supp. 3d at 604. The burden of establishing the existence of similarly situated class members is "fairly lenient," requiring only a "modest factual showing." *Id.* The fact that a defendant company has a written policy requiring employees to accurately record their overtime or prohibiting off-the-clock work does not defeat plaintiff's claims at this stage. *Adams v. Citicorp Credit Servs.*, 93 F. Supp. 3d 441, 455 (M.D.N.C. 2015).

That being said, a court's discretion to certify a conditional class is not unfettered. *O'Quinn*, 469 F. Supp. 3d at 605. Courts must examine the facts and circumstances of the case to determine if a class of similarly situated employees

exists. *Id.* Broad allegations that a defendant company has a policy or practice that violates the FLSA, without factual support, are not sufficient to support conditional class certification. *Adams*, 93 F. Supp. 3d at 32; *DeLoso v. Multifresh, Inc.*, No. 5:12-CV-01165, 2013 WL 425823, at *5 (S.D. W. Va. Feb. 4, 2013) (denying certification where plaintiffs "offered nothing beyond the allegations in their pleading in support of their assertion that similarly situated, aggrieved employees exist."). The bar to obtain class certification is low, but "it is a bar just the same." *DeLoso*, 2013 WL 425823, at *5.

A single plaintiff's declaration can provide sufficient support to grant conditional class certification. In *Mercado v. North Star Foundations, Inc.*, the court relied solely on the declaration of the plaintiff, in which he alleged that he and other drivers were required, but not paid, to return tools to the shop and then drive co-workers home after work. No. WMN-10-3467, 2011 WL 1557887, at *2–3 (D. Md. Apr. 21, 2011). The court conditionally certified a class of company drivers, though it declined to certify their passengers as conditional class members. *Id.*

In *Clark v. Williamson*, the court conditionally certified a class of home health workers employed by the defendant based on plaintiff's declaration that she knew "from talking to other home healthcare workers" that the defendant improperly classified its workers as independent contractors. No. 1:16-CV-1413, 2018 WL 1626305, at * 3 (M.D.N.C. Mar. 30, 2018). The court specifically found that it could "consider such evidence that may otherwise be considered hearsay because

6

[plaintiff's] source of the relevant information was her own personal knowledge of the alleged statements of other employees." *Id.*

Here, I find that Mr. Ricketts has met the lenient burden to make a modest factual showing supporting his claims, but I conditionally certify a class of only those inspectors who worked at Mr. Ricketts's jobsites: the Broad Run Expansion projects for Kinder Morgan in Dunbar, WV, and the TransCanada project in Mineral Wells, WV.

At this stage in the litigation, I cannot make factual or credibility determinations or decide the merits of a claim. Therefore, NV5's arguments about whether Mr. Ricketts was actually paid a day rate are premature. Mr. Ricketts has alleged that NV5 violated the FLSA. He has also alleged that other inspectors were victims of that violation. The only question before me now is whether he has supported those allegations with modest factual support.

Mr. Ricketts asserts that he was paid a day rate of $331.90, disguised as hourly pay. He claims that NV5 hid its day rate scheme by requiring employees to falsify their timesheets to reflect that they worked ten hours a day for seven days a week, regardless of the actual hours they worked. To support this claim, he provides a timesheet and paystub showing that he recorded that he worked exactly ten hours per day, seven days per week. He further claims that all inspectors at NV5 were required to do the same. To support this allegation, he cites conversations with his co-workers and observations he made on jobsites. As my sister courts have done, I,

too, find that allegations based on personal conversations with co-workers can meet the lenient standard required for conditional class certification. I do, however, decline to certify a class of individuals beyond those of whom Mr. Ricketts has personal knowledge. Mr. Ricketts asserts only that his claims are based on conversations with his co-workers and observations made on site. I therefore find that he has not made any factual showing that NV5 inspectors outside of those jobsites were paid a disguised day rate.

### b. Notice

Having concluded that conditional certification is appropriate, I now turn to Mr. Ricketts's request for court-facilitated notice to the opt-in class. Courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs" of the pendency of the collective action. *Hoffmann–La Roche, Inc.*, 493 U.S. at 169 (1989); *see also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th Cir. 1992). Courts also have "broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Byard v. Verizon W. Va., Inc.*, 287 F.R.D. 365, 372 (N.D. W. Va. 2012) (internal citation omitted). "In its notice-facilitation role, the Court settles disputes regarding notice content, and 'ensure[s] that it is timely, accurate, and informative.'" *Davis*, 2019 WL 6499127, at *9 (quoting *Hoffmann-La Roche*, 493 U.S. at 172).

NV5 objects to Mr. Ricketts's proposed notice on several grounds: (1) the description of the class; (2) the lack of warnings provided to potential plaintiffs; (3)

8

the method of communication by which the notice may be sent; and (4) the frequency with which the notice may be given to the same potential plaintiff. [ECF No. 24, at 20–21 n. 2]. NV5 requests that the court give the parties a reasonable time to meet and confer on the content of the proposed notice and bring any further dispute to the court. I do not find it necessary to order the parties to meet and confer. I will address each of NV5's objections in turn.

### 1. Description of Class

Mr. Ricketts requests the court authorize that notice be sent to "[a]ll current and former NV5 Inspectors who were paid on a day rate basis at any time in the past 3 years." [ECF No. 20]. NV5 objects for three reasons. First, NV5 objects to naming the class "Inspectors who have been paid a day rate" because it is still disputed that any inspectors were, in fact, paid a day rate. [ECF No. 24, at 20 n.2]. Second, NV5 asks the court to limit the putative class to include only inspectors who worked on the Kinder Morgan Pipeline project in Dunbar, WV, and the TransCanada Project in Mineral Wells, WV. [ECF No. 24, at 19–20]. Finally, NV5 objects to the timeframe of the putative class, arguing that the class be limited to two years preceding the court's ruling because there is no evidence presented that NV5's conduct was "willful." [ECF No. 24, at 20 n. 2].

I **SUSTAIN** NV5's objections to the location and description of putative class members. I agree with NV5 that a putative class of "Inspectors who have been paid a day rate" will not encompass inspectors similarly situated to Mr. Ricketts. Mr.

Ricketts has not made a traditional day rate claim. Instead, he claims that he and other inspectors at his jobsites were paid a disguised day rate based on timekeeping requirements. Additionally, Mr. Ricketts bases his allegations on observations at his jobsites and conversations with co-workers. He presents no evidence of a company-wide policy of paying inspectors a disguised day rate. Therefore, the putative class should simply be NV5 Inspectors who worked at the Kinder Morgan Broad Run Expansion Project in Dunbar, WV, and the TransCanada Pipeline project in Mineral Wells, WV.

I **OVERRULE** NV5's objection to the timeframe of the putative class. NV5 argues that the statute of limitations for FLSA actions only allows claims to be brought within a three-year time period if a NV5's violation was "willful." 29 U.S.C. § 255(a). Dispositively, however, NV5 did not plead lapsing of the statute of limitations as a defense to Mr. Ricketts's claims—which fall outside of the standard two-year period. Having conceded the issue with respect to Mr. Ricketts, NV5 cannot claim that its conduct was any less willful with respect to the putative class members.

In accordance with these rulings, I define the putative class as:

> "**All Inspectors employed by NV5 who worked on the Broad Run Expansion Project for Kinder Morgan in Dunbar, West Virginia, and/or the TransCanada project in Mineral Wells, West Virginia, within the last three years.**"

NV5's objections to the description and location of the class are **SUSTAINED**, and NV5's objection as it relates to the timeframe is **OVERRULED**.

### 2. Warnings to Potential Plaintiffs and Defendant's Litigation Position

NV5 objects to the form of the notice, arguing that it fails to properly articulate NV5's litigation position, fails to explain the counsel's contingency fee arrangement, and fails to inform individuals that they could be subject to costs if they do not win or that they might be required to sit for deposition if they opt in. [ECF No. 24, at 20 n. 2]. Mr. Ricketts responds by arguing that these "warnings" are "nothing more than an attempt to discourage participation." [ECF No. 25, at 13].

I agree that NV5's proposed warnings are unnecessary and do more to dissuade participation than inform potential plaintiffs. Like other notice forms approved by this court, Mr. Ricketts's proposed notice advises potential plaintiffs that they will *not* be subject to costs, that they can hire their own attorney, that NV5 disputes all allegations, and that they can discuss any questions they have with counsel before joining the class. Therefore, NV5's request to include "warnings" is **OVERRULED**.

### 3. Method of Communication

Mr. Ricketts requests the court order NV5 to provide counsel with the names, current or last known physical addresses, email addresses (both personal and work, if available), and telephone numbers for putative class members. Mr. Ricketts further requests the court authorize counsel to send the approved notice to the putative class members via United States First Class Mail, email, and text message. [ECF No. 20]. NV5 objects to the production of email addresses and telephone numbers and to the use of email and text for notice. [ECF No. 24].

11

"At the notice stage of FLSA actions, e-mail addresses are routinely disclosed." *Pecora v. Big M Casino*, Inc., No. 4:18-CV-01422-RBH, 2019 WL 302592, at *5 (D.S.C. Jan. 23, 2019) (citing *McCoy v. RP, Inc.*, No. 2:14-CV-3171-PMD, 2015 WL 6157306, at *4 (D.S.C. Oct. 19, 2015)). "[C]ommunication through email is [now] the norm." *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012). "Email is a more reliable form of communication than paper mailing, given that mailing addresses tend to change more often than email addresses." *O'Quinn*, 469 F. Supp. 3d, at 610.

However, production of telephone numbers generally requires the plaintiffs to demonstrate a "special need." *Pecora*, 2019 WL 302592, at *5. In this case, Mr. Ricketts argues that requesting and using telephone numbers is warranted because the "transitory nature" of NV5 inspectors makes it difficult for them to receive mail. [ECF No. 20]. NV5 argues that Mr. Ricketts has presented "no evidence that notice by mail would be ineffective." [ECF No. 24]. I agree with Mr. Ricketts. In the span of six months, Mr. Ricketts worked at two different job sites located about an hour apart from each other. It is logical that other putative class members might similarly move around. I therefore find that production of telephone numbers is appropriate.

NV5's objection to the production and use of email addresses and telephone numbers for notice is **OVERRULED**.

### 4. Frequency of Notice

Mr. Ricketts requests that the court authorize his counsel to send a second,

identical copy of the Notice and Consent Form to putative class members 30 days from the mailing of the original forms. [ECF No. 20]. NV5 objects, requesting that the court limit Mr. Ricketts to sending the approved notice to putative class members only once, "especially if Plaintiff is permitted to make contact via email and text message." [ECF No. 24].

I find a reminder notice in this case to be unnecessary and inappropriate, except where the original notice is returned as undeliverable. "[D]istrict courts around the country have found reminder notices have a tendency to both stir up litigation . . . and inappropriately encourage putative plaintiffs to join the suit." *Byard*, 287 F.R.D. at 373 (collecting cases) (internal citations omitted); *see also Wolfran v. PHH Corp*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012) ("Many courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit and encouraging participation.")). Indeed, "[t]he purpose of notice is to simply inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit." *Id.* (quoting *Witteman v. Wisconsin Bell, Inc.*, No. 09-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010)).

NV5's objection to the second, reminder notice is **SUSTAINED**.

### 5. Approved Notice Order

In accordance with this Order, the court will issue a separate Order containing, inter alia, instructions regarding the issuance of court-supervised notice.

### III. Conclusion

The motion is **GRANTED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 29, 2022

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

14